UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


RICKY GIROIR                                CIVIL ACTION

V.                                          NO. 18-3595

CENAC MARINE SERVICES, LLC                  SECTION "F"


<u>ORDER AND REASONS</u>

Before the Court are two motions: (1) the defendant's motion
for summary judgment on the plaintiff's Jones Act negligence and
unseaworthiness claims; and (2) the defendant's motion for summary
judgment on the plaintiff's maintenance and cure claim with respect
to his alleged back injury.  For the reasons that follow, the
motions are GRANTED.

**Background**

This maritime personal injury litigation arises out of a
relief captain's claim that he sustained injuries on two separate
occasions while working aboard vessels owned by his employer.

Ricky Giroir began working for Cenac Marine Services, LLC
("CMS") in November of 2013 as a relief captain and allegedly
suffered injuries to his lower back in September of 2015 and his
right knee in November of 2017.  Prior to working for CMS, Mr.
Giroir had worked for several other companies and was experienced

in conducting tow operations.[1]  He also had an extensive medical and surgical record pre-dating his tenure with CMS; that record features a history of congenital birth defects and countless injuries sustained both on and off-the-job.

## A. *Giroir's Pre-Existing Medical Conditions*

As a child, Mr. Giroir underwent bilateral foot surgery to correct his congenital club feet and arthroscopic surgery of his left knee.  As an adolescent, he injured his right knee while playing high school football and had an additional arthroscopic surgery.  During that time, he also began to experience problems with his congenital lower back condition, for which he underwent lumbar surgery.  Suffering from obesity, Giroir closed off his adolescent years with gastric bypass surgery.

As an adult, Mr. Giroir went on to suffer two on-the-job injuries while working for Settoon Towing.  He first injured his neck and right shoulder when a flat boat fell on him during a crew change; these injuries required two different surgeries.  He also injured his lower back while "pulling on some hoses" and was diagnosed with lumbar strain.  A few years later, in June of 2006, Mr. Giroir reported to Dr. Thomas Donner with complaints of numbness and cramping of his right leg.  After disclosing his prior

---

[1] During his deposition on January 16, 2019, Mr. Giroir testified that he worked for the following companies prior to his employment with CMS: Cenac Towing, Settoon Towing, Cenac Towing (for a second time), LeBeouf Towing, and REC Marine.

on-the-job back injury, he indicated that his symptoms had progressed to the extent that he could only walk for a few minutes at a time and that the symptoms would improve if he walked bent forward, like he was "over a shopping cart." Dr. Donner then reviewed an MRI of Giroir's lumbar spine and noted an impression of "severe lumbar stenosis." Despite initially attempting to treat his lumbar stenosis with steroid epidural injections, Mr. Giroir ultimately elected to undergo a decompressive laminectomy at the L2-L3 level on November 8, 2006.

Almost two years passed without incident until March of 2008 when Giroir reported to Drs. Larry Haydel and Brandon Brooks with complaints of right knee pain. An MRI of Giroir's right knee performed at that time revealed a torn anterior cruciate ligament, severe loss of cartilage in the posterior aspects of the patella, and large joint effusion. Later, in December of 2011, Giroir was involved in a motor vehicle accident when the car in which he was riding as a passenger was rear ended; he was placed on a spine board at the scene and transported to the hospital by ambulance. The following year, he failed a pre-employment physical when applying for a position with Enterprise Marine Services. As a result, he elected to undergo a cervical fusion surgery, after which he was able to pass a pre-employment physical with LeBeouf Brothers.

*B.* The CMS Application Process

On November 7, 2013, Mr. Giroir completed an application for employment with Cenac Marine Services, LLC, in which he indicated that he did not have any physical or mental condition(s) which may interfere with or hinder the performance of the job for which he wished to be considered. Although he did disclose on the application that he had sustained a prior on-the-job neck and shoulder injury while working for Settoon Towing, he did not disclose his prior on-the-job back injury. In connection with the application process, Mr. Giroir also was required to complete a medical questionnaire and undergo a pre-employment physical exam. When asked whether he had a prior or current back injury, Giroir changed his response on the questionnaire from "yes" to "no;" he signed and dated the form on November 12, 2013. That same day, he reported to Dr. Kirk Dantin for a pre-employment physical exam, during which he indicated that he had hurt his "back or neck" and had surgery. He went on to reveal his history of surgeries on his neck, knees, and feet, as well as his history of bilateral club feet. He did not, however, disclose his back injury, conditions, or surgeries. Based on these representations, Dr. Dantin released Mr. Giroir to "employment without restrictions." The following year, on December 2, 2014, Giroir indicated on his annual physical form that, at some point in time, he had "hurt [his] back or []

experienced back pain."  He also informed the physician that he had undergone surgery on his lumbar spine at age 19 or 20.

*C.* The 2015 and 2017 Incidents

In September of 2015, Mr. Giroir was working aboard the M/V EUGENIE CENAC when he allegedly sustained disabling injuries to his lower back after retrieving a sixty-to-seventy-pound oil pump from a shelf in the vessel's engine room.  Following the incident, Mr. Giroir completed an accident investigation report, in which he explained how the injury occurred: "When getting the oil pump off of shelf felt a pop in lower left side of back."  He further indicated that the engine room was well lit at the time of the incident and that the accident did not involve damage to the hull or equipment.  Although he reported that the injury could have been avoided if someone had helped him, he has stated under oath that he elected not to ask for help even though another crewmember was available to assist him; he also has testified that no condition of the EUGENIE CENAC caused his back injury.

After the alleged 2015 incident, Mr. Giroir continued to work aboard the M/V EUGENIE CENAC until October 30, 2015 when he visited an urgent care clinic in Parkersburg, West Virginia with complaints of lower back pain and weakness in his extremities.  An x-ray performed that day revealed degenerative changes in Mr. Giroir's back, particularly at the L1-L2 levels.  Giroir then returned home to Louisiana where an MRI of his lumbar spine was completed on

November 18, 2015; it showed evidence of spinal canal narrowing and lumbar stenosis at the L1-L5 levels.

In February of 2016, Dr. Phillip McAllister of Tri-Parish Orthopedics advised Mr. Giroir that he suffered from post-laminectomy syndrome (related to his prior lumbar surgery), intervertebral disc degeneration, and spinal stenosis. Dr. McAllister also recommended a lumbar laminectomy with ITP fusion at the L2-S1 levels. Mr. Giroir elected to undergo surgery for his lumbar stenosis, after which he was out of work for four months; he remained on CMS's payroll during that time and ultimately was released to work in June of 2016.

Less than six months later, on November 22, 2017, Mr. Giroir allegedly sustained an unrelated on-the-job injury in connection with his assignment as a relief captain aboard the M/V CHRISTINE CENAC when he fell on a flat boat while traveling to shore for a crew change. About three weeks later, on December 15, 2017, Mr. Giroir completed an incident report, in which he described the incident as follows: "While crew changing the flat boat rocked causing me to fall on my right knee and twisting left ankel [sic]." He further clarified in the report that the injury occurred when he "was getting out the flat boat" and that the boat rocked, which caused him to trip. He also reported that the accident could not have been prevented, was not caused by unfit or unreasonable equipment, and was not anyone's fault. Similarly, Mr. Giroir has

testified that he believes the 2017 incident could not have been prevented and was not caused by unfit or unreasonable equipment; rather, he has stated under oath: "It ain't nobody's fault. It's an act of Mother of God, an act of nature." Following the 2017 incident, Giroir visited Terrebone General Hospital, after which he underwent a knee replacement surgery under the care of Dr. William Kinnard.

On April 4, 2018, Mr. Giroir sued Cenac Marine Services, LLC, alleging that the defendant's negligence under the Jones Act and the unseaworthiness of its vessels under the general maritime law caused his injuries in 2015 and 2017; he also alleges that the defendant owes him maintenance and cure for both incidents. In response, CMS filed a counterclaim on July 26, 2018, seeking to recover payments made to and on behalf of Mr. Giroir for maintenance and cure that are not related to his work activity with the company. CMS now seeks summary judgment in its favor, dismissing the plaintiff's Jones Act and unseaworthiness claims; the defendant also seeks summary dismissal of the plaintiff's maintenance and cure claim insofar as it concerns his alleged back injury.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to

7

judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate.

Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

## II.

### A.

Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury, in whole or in part. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc).[2] To prevail in a Jones Act negligence claim,

---

[2] Mr. Giroir's seaman status is undisputed as to both alleged incidents.

> the plaintiff must present some evidence from which the
> fact finder can infer that an unsafe condition existed
> and that the vessel owner either knew, or in the exercise
> of due care should have known, of the condition.

Martinez v. Offshore Specialty Fabricators, Inc., 481 F. App'x 942, 945, 947 (5th Cir. 2012) (citing Perry v. Morgan Guar. Trust Co. of N.Y., 528 F.2d 1378, 1379 (5th Cir. 1976)).

A Jones Act employer has the duty to provide his seaman employees with a reasonably safe place to work. Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1989). The duty to provide a safe place to work is broad in scope, but it is not a form of strict liability; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman. Gautreaux, 107 F.3d at 335-36. Likewise, seamen are held to the standard of the reasonable seaman in like circumstances. Id. at 339 (explaining that the circumstances include the employee's reliance on his employer to provide a safe working environment, the seaman's experience, training, or education). And the causation standard is the same for both the employer's negligence and contributory negligence: causation is established if the party's "negligence played any part, even the slightest, in producing the injury." See Martinez, 481 F. App'x at 947 (quoting Johnson v. Cenac Towing, Inc., 544 F.3d 296, 303 (5th Cir. 2008)). However, more than mere "but for" causation

must be established.  <u>Johnson v. Cenac Towing, Inc.</u>, 544 F.3d 296, 302 (5th Cir. 2008) (citation omitted).

<i>B.</i>

To succeed on his Jones Act negligence claim at trial, Mr. Giroir must prove that CMS's negligent breach of duty caused at least one of his injuries; he must present some evidence from which the fact finder can infer that an unsafe manner of operation or navigation was used (here, the alleged improper method of storing and unloading the oil pump, or of transporting crew members to shore) and that CMS knew or should have known of such danger.  CMS seeks judgment as a matter of law on the ground that it is not liable for plaintiff's injuries because he has failed to present any competent evidence to demonstrate that CMS breached a duty owed to him as to either alleged incident.

As for the 2015 incident, Mr. Giroir indicated on his accident investigation report and confirmed during his deposition that he felt a pop in the lower left side of his back while retrieving an oil pump off of a shelf in the engine room of the M/V EUGENIE CENAC.  Advancing a "negligent storage" theory of recovery in his opposition papers, Giroir invokes <u>Martinez v. Offshore Specialty Fabricators, Inc.</u>, in which another Section of this Court held that "[r]equiring a Jones Act seaman to work in 'awkward and confined quarters without adequate help and without suitable tools and equipment' can be negligence under the Jones Act."  <u>Martinez</u>

_v. Offshore Specialty Fabricators, Inc._, No. 08-4224, 2011 U.S. Dist. LEXIS 43641, at *14 (E.D. La. Apr. 19, 2011) (Fallon, J.) (quoting _Crador v. La. Dep't of Highways_, 625 F.2d 1277, 1230 (1980)). Although Mr. Giroir _argues_ in his opposition papers that the heavy, sixty-to-seventy pound pump he was instructed to use for oil changes was "inappropriately stored in a small, tight, difficult to access overhead shelf," he has presented no evidence of record (through testimony or affidavit) regarding the placement of the shelf, the size of the engine room, or the absence of adequate help to assist him in retrieving the pump.

To the contrary, Mr. Giroir has stated, under oath, that the injury could have been avoided if someone had helped him but that he elected not to ask for assistance.

> **Q:** Could this injury have been avoided?  And you circled yes.  And what did you explain, how could it have been avoided?
> **A:** Had someone helped me.
>
> **Q:** All right.  So there were personnel aboard the vessel available to you as an operator, that could have helped you?
> **A:** Yes.
>
> **Q:** And you, as an operator, elected not to have someone help you?
> **A:** Yup.
>
> **Q:** When you moved this pump in the engine room, was there anyone else besides you in the engine room?
> **A:** Yes.
>
> **Q:** Who was in the engine room with you?
> **A:** Donald Anderson.
>                         . . .

**Q:** So, Mr. Anderson would have been in the engine room, available as assistance to help you, had you asked for it?
**A:** Yes.

Similarly, Giroir's incident report and deposition testimony respecting the 2017 incident demonstrate on the record that this incident was unavoidable and that CMS breached no duty owed to the plaintiff. Although Mr. Giroir reported that he tripped, twisted his left ankle, and fell on his right knee when a flat boat on which he was traveling to shore for a crew change "rocked" as he "was getting out," he has testified that the incident could not have been prevented and was not anyone's fault.

**Q:** So when filling this out in September of 2017 – December 15th, 2017, you didn't think this accident could have been prevented?
**A:** No.

. . .

**Q:** Was the accident caused by unfit or unreasonable equipment? And you checked no. Again, this accident was not caused by any of the equipment, correct?
**A:** Yup.

**Q:** And finally: Was this injury caused by anyone's fault? And you checked no, this wasn't caused by anyone's fault?
. . .
**A:** It ain't nobody's fault. It's an act of Mother of God, an act of nature.

Notwithstanding his sworn testimony, Giroir now attempts to defeat summary judgment by contending in his opposition papers that he may (through counsel) be able to establish a potentially valid Jones Act negligence claim at trial. For support, Giroir relies heavily upon Sims v. Hughes, in which another Section of

this Court denied an employer's motion for summary judgment as to a Jones Act negligence claim because the seaman had "pointed to sufficient evidence to demonstrate a genuine dispute as to whether [another] employee breached his duty of care and thereby caused injury to" the plaintiff. No. 12-421, 2013 U.S. Dist. LEXIS 47594, at *4-5 (E.D. La. Apr. 1, 2013) (Engelhardt, J.). The Sims court emphasized that the seaman's deposition testimony absolving his employer of liability was "not entitled to . . . conclusive legal effect" because the seaman also "submitted deposition testimony tending to show that the deck foreman may have erred in following and/or relaying orders regarding the procedure for disconnecting the hose." Id. at *5. But, in this case, Mr. Giroir, as the relief captain of each CMS vessel, has admitted under oath that there is no evidence indicating that anyone was at fault (aside from himself).[3]

---

[3] The Court is similarly unpersuaded by Giroir's attempt to defeat summary judgment through a negligent job assignment theory of recovery. In his opposition papers, he appears to contend that CMS should have been on notice of his pre-existing back condition and, therefore, was negligent in allowing him to work as a relief captain.

For support, Giroir invokes Townsend v. Diamond Offshore, in which another Section of this Court held that an employer was negligent in allowing a seaman to work as a roustabout because the employer "knew or should have known that [the plaintiff] was not qualified for heavy manual labor on its offshore drilling vessel." No. 07-7651, 2009 U.S. Dist. LEXIS 69215, at *11-12 (E.D. La. Aug. 7, 2009) (Barbier, J.). The Court finds Giroir's reliance on Townsend, a negligent clearance case, misplaced. In Townsend, the plaintiff underwent a pre-employment physical, which revealed two herniated discs in his back, after which the employer's contracted

Significantly, "a Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability." Marvin v. Central Gulf Lines, Inc., 554 F.2d 1295, 1299 (5th Cir.), cert. denied, 434 U.S. 1035 (1978). Although Mr. Giroir contends that his deposition testimony should not be treated as a judicial admission, he simply presents no competent evidence to controvert his sworn testimony or indicate how CMS was negligent in causing or contributing to his alleged injuries. See St. Angelo v. Pacific-Gulf, Inc., No. 89-5364, 1991 U.S. Dist. LEXIS 1755, at *7-8 (E.D. La. Feb. 7, 1991) (Wicker,

---

physician cleared the plaintiff to work as a roustabout aboard a drilling vessel. Id. at *3-4. As a result of the negligent clearance, the plaintiff sustained injuries while performing heavy manual labor. Id. at 10-12.

Here, Mr. Giroir underwent a pre-employment physical in November of 2013 during which he failed to disclose his prior back conditions and surgeries. Moreover, the Court is not persuaded by Mr. Giroir's effort to impute knowledge of his back problems to CMS. Pointing to his deposition testimony for support, Giroir contends that he was working for Cenac Towing in November of 2006 when he underwent a lumbar laminectomy surgery. Accordingly, he asks the Court to infer that Cenac Towing knew about his lumbar laminectomy surgery and contends that such knowledge can be imputed to CMS.

However, he also acknowledged during his deposition that "Cenac Marine Services is a totally different company than Cenac Towing Company was," "is at a different physical location," and "doesn't have any of the boats and the barges that used to be Cenac Towing Company." He also testified that he took two weeks off to recover from the lumbar laminectomy surgery, after which he continued to work for Cenac Towing for a couple of years without incident. Accordingly, Mr. Giroir has not demonstrated that a genuine dispute exists as to whether CMS knew or should have known that Mr. Giroir was not physically qualified for heavy manual labor on its vessels as of the date of his injury in 2015.

J.) ("The evidence which plaintiff has submitted on his claim for negligence borders on a metaphysical doubt since he only relied on his deposition, which for the most part contradicts any allegations of negligence on the part of the crew."). Because the plaintiff cannot establish an essential element of his Jones Act negligence claim with respect to either alleged incident, summary judgment in CMS's favor is warranted.[4]

### III.

*A.*

Independent from a claim under the Jones Act, a seaman has a claim for injuries caused by the unseaworthiness of a vessel under the general maritime law. The duty of a vessel owner to provide a seaworthy vessel is an absolute non-delegable duty; the duty imposes liability without fault. See <u>Mitchell v. Trawler Racer, Inc.</u>, 362 U.S. 539, 548-49, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). A ship is seaworthy if the vessel, including her equipment and crew, is reasonably fit and safe for the purposes for which it was intended to be used. <u>Boudreaux v. United States of America</u>, 280 F.3d 461, 468 (5th Cir. 2002) (citation omitted); <u>Boudoin v. Lykes Bros. S.S. Co.</u>, 348 U.S. 336, 339, 75 S.Ct. 382, 99 L.Ed. 354

---

[4] Having determined that Mr. Giroir has presented no competent evidence of negligent breach of duty, the Court need not reach the alternative ground upon which CMS seeks summary relief – namely, that Giroir's alleged injuries stem exclusively from his pre-existing conditions.

(1955) ("The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service."). "[U]nseaworthiness is a condition, and how that condition came into being – whether by negligence or otherwise – is quite irrelevant to the owner's liability for personal injuries resulting from it." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 498 (1971).

Unseaworthiness is not a fault-based standard; however, a plaintiff must show that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir. 1992).

> A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper.

Usner, 400 U.S. 494 at 499 (internal citations omitted); see also Webb v. Dresser Indus., 536 F.2d 603, 606 (5th Cir. 1976), cert. denied 429 U.S. 1121, 97 S. Ct. 1157, 51 L.Ed.2d 572 (1977). A vessel is also unseaworthy when an unsafe method of work is used to perform vessel services. Rogers v. Eagle Offshore Drilling Serv., 764 F.2d 300, 303 (5th Cir. 1985); Burns v. Anchor-Wate Co., 469 F.2d 730 (5th Cir. 1972). On the other hand,

[a]n isolated personal negligent act of the crew" is not enough to render a ship unseaworthy. <u>Daughdrill v. Ocean Drilling & Exploration Co.</u>, 709 F. Supp. 710, 712 (E.D. La. 1989). Rather, there should be evidence of "a congeries of acts." <u>Id.</u> (quoting <u>Robinson v. Showa Kaiun K.K.</u>, 451 F.2d 688, 690 (5th Cir. 1971)).[5]

*B.*

CMS contends that Mr. Giroir has presented no evidence to show that any condition aboard CMS's vessels, or concerning their appurtenances or crews, rendered the vessels unseaworthy. For support, CMS points to the incident reports completed by Giroir following each alleged incident, as well as his own deposition testimony, in which he reaffirms his account of each incident.

As for the 2015 incident, Giroir reported that the engine room was well lit at the time of the incident and that the accident did not involve damage to the hull or equipment. Although he also reported that the injury could have been avoided if someone had helped him, he has stated, under oath, that he elected not to ask for help even though another identified crewmember was available to provide assistance. In a similar vein, Giroir has testified

---

[5] A seaman has a duty under both the Jones Act and general maritime law to act as an ordinary prudent seaman would act in the same or similar circumstances. <u>Jackson v. OMI Corp.</u>, 245 F.3d 525, 528 (5th Cir. 2001). If a seaman's negligence contributes to his injury, his "contributory negligence will not bar his recovery, but may reduce the amount of damages owed proportionate to his share of fault." <u>Jauch v. Nautical Services, Inc.</u>, 470 F.3d 207, 213 (5th Cir. 2006).

that no condition of the EUGENIE CENAC or its equipment caused the accident or his back injury.

> **Q:** Okay.  Is there anything that the boat, the condition of the Eugenie Cenac, did to cause your injury on September 5th, 2015?
> **A:** No.
>
> **Q:** Okay.  Is there anything that your coworkers aboard the Eugenie Cenac did in September of 2015 that caused your back injury?
> **A:** No.

With respect to the 2017 incident, Giroir reported that he tripped, twisted his left ankle, and fell on his right knee when a flat boat on which he traveling to shore for a crew change "rocked" as he "was getting out."  He further reported that the accident could not have been prevented, was not caused by unfit or unreasonable equipment, and was not anyone's fault, and he has testified that he believes the 2017 incident could not have been prevented and was not caused by unfit or unreasonable equipment; rather, he has stated under oath that the incident was "an act of Mother of God, an act of nature."

> **Q:** So when filling this out in September of 2017 – December 15th, 2017, you didn't think this accident could have been prevented?
> **A:** No.
>
> . . .
>
> **Q:** Was the accident caused by unfit or unreasonable equipment?  And you checked no.  Again, this accident was not caused by any of the equipment, correct?
> **A:** Yup.
>
> **Q:** And finally: Was this injury caused by anyone's fault? And you checked no, this wasn't caused by anyone's fault?

. . .

**A:** It ain't nobody's fault.  It's an act of Mother of God, an act of nature.

The Court recognizes that "an unsafe method of work may . . . render a vessel unseaworthy."  <u>See</u> <u>Broussard v. Stolt Offshore, Inc.</u>, 467 F. Supp. 2d 668, 670 (E.D. La. 2006) (Lemmon, J.) (quoting <u>Phillips v. Western Co. of North America</u>, 953 F.2d 923, 928 (5th Cir. 1992)).  But, Mr. Giroir's testimony that he injured his back while retrieving a sixty-to-seventy-pound oil pump off of a shelf, without any facts tending to show that CMS stored the pump in an unsafe location or instituted an unsafe procedure for lifting the pump, fails to establish a genuine dispute as to whether the M/V EUGENIE CENAC was unseaworthy.  And Giroir's bare testimony that he injured his left ankle and right knee when a flat boat "rocked" fails to create a genuine issue for trial as to the seaworthiness of the M/V CHRISTINE CENAC.  Indeed, Giroir concedes that this incident "was an act of Mother of God, an act of nature."

The Court is also not persuaded by Mr. Giroir's convenient contention that he does not understand the meaning of the term "unseaworthiness" and, therefore, "struggled" to respond to non-factual questions posed by defense counsel during his deposition. First, no form of the word "unseaworthy" appears in the three-hundred-page deposition transcript submitted to this Court.  More importantly, Giroir was vetted at length during his six-hour

deposition to identify any person or equipment that may have caused or contributed to either of his incidents, and he consistently testified under oath that he did not fault the vessels, their equipment, or their crew. Because the record is devoid of any evidence to suggest that Giroir can establish that either vessel was unseaworthy, summary dismissal of his unseaworthiness claim is appropriate.

IV.

*A.*

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Meche v. Doucet, 777 F.3d 237, 244 (5th Cir. 2015) (quoting Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006) (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968))). The obligation to pay maintenance and cure exists regardless of whether the shipowner was at fault or the vessel unseaworthy. O'Donnell v. Great Lakes Dredte & Dock Co., 318 U.S. 36, 41-42 (1943); Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995), *abrogated on other grounds by* Atlantic Sounding Co., Inc. v. Townsend, 129 S. Ct. 2561 (2009). "'Maintenance is a daily stipend for living expenses,' whereas 'cure is the payment of medical expenses.'" Meche, 777 F.3d at 244 (citations omitted).

Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." McCorpen, 396 F.2d at 548. Notwithstanding this general principle, a court will deny maintenance and cure when a seaman wrongfully concealed a pre-existing medical condition at the time he was employed. Id. at 548-49. Under McCorpen, an employer is relieved from its duty to pay maintenance and cure in certain circumstances:

> where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure. Of course, the defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage.

Id. at 549 (internal citations omitted). Accordingly, to establish a McCorpen defense to maintenance and cure, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to the employer's decision to hire him; and (3) there is a causal link between the withheld information and his injury complaint. Meche, 777 F.3d at 244-45.

*B.*

In support of its McCorpen defense, CMS submits that Giroir blatantly failed to disclose his history of back pain and surgeries on two different medical questionnaires submitted during the

employment application process with CMS, and now seeks maintenance and cure for a lower back injury.  CMS submits that summary relief in its favor dismissing the plaintiff's maintenance and cure claim as to his alleged back injury is appropriate because all three elements of the <u>McCorpen</u> defense are satisfied.  The Court agrees.

*Concealment*

The record first demonstrates that Giroir intentionally concealed pertinent medical facts when he applied to work for CMS in November of 2013.  In support of the concealment element,[6] CMS points to Giroir's own deposition testimony:

> **Q:** So tell me what is your handwriting on this medical questionnaire . . . After you filled those questions in, the yesses and nos that are circled, did you circle those things?
> A: Yes.
>
> . . .
>
> **Q:** All right.  The fourth one down asks "Back Injury" and you circled no, correct?
> A: Yes.

. . .

---

[6] In further support of this concealment element, CMS offers Mr. Giroir's application for employment with CTCO Benefit Services L.L.C., dated November 7, 2013, in which Giroir indicated that he did not have any physical or mental condition(s) which may interfere with or hinder the performance of the job for which he wished to be considered.  Although he did disclose on his application that he had sustained a prior on-the-job neck and shoulder injury in 2006 while working for Settoon Towing, he did not reveal a prior on-the-job back injury.

CMS also submits its medical questionnaire, dated November 12, 2013, in which Giroir first circled "yes" and then scratched out the answer and circled "no" in response to the question "Have you ever had or do now [sic] have: back injury."

> **Q:** Okay.  And so, we'll go back to the questionnaire
> from Cenac in 2012.  You didn't tell them about you [sic]
> had low back pain because of work activity that you had
> engaged in in 2003, did you?
> **A:** No, I didn't think it was nothing.  It was a minor
> lumbar strain.

Based on Giroir's testimony, it is undisputed that he did not

disclose any prior back condition, injury, or surgery when applying

for employment with CMS in 2013.  And the Court is not persuaded

by Mr. Giroir's attempts to manufacture a fact issue as to whether

he intentionally concealed or misrepresented his pre-existing back

problems.

Giroir seeks the shield of a fact issue by contending that

CMS was on notice during the application process that he had

undergone a lumbar laminectomy surgery in 2006.  For support, he

points to his deposition testimony, in which he states that he was

working for Cenac Towing in November of 2006 when he underwent a

lumbar laminectomy surgery with Dr. Donner.

> **Q:** My notes indicate that you had the surgery on November
> 8th, 2006 for lumbar stenosis; does that sound correct
> to you?
> **A:** Yes, sir.
>
> Q: So this surgery that you had done to your back in
> 2006 would have been a surgery that you didn't tell Cenac
> about when you were looking for work in 2012, correct?
> **A:** I was working for Cenac in 2006.
>
> **Q:** Okay.  So you think that you were working for Cenac
> when Dr. Donner did this 2006 surgery?
> **A:** Yes, sir.

He next submits documentation from the Louisiana Secretary of State, demonstrating that Cenac Towing Co., LLC and Cenac Marine Services, LLC are related single-member entities that share the same domicile address and are owned by the same individual, Arlen B. Cenac, Jr. He then urges the Court to infer that Cenac Towing was on notice of his 2006 lumbar laminectomy surgery and to impute such knowledge to its related entity, Cenac Marine. However, as discussed in the context of Mr. Giroir's Jones Act negligence claim, nothing of record imputes Cenac Towing's hypothetical notice of Giroir's 2006 lumbar laminectomy surgery to Cenac Marine.

Insofar as Mr. Giroir attempts to create a fact issue by contending that he did not *intentionally* conceal his pre-existing lower back problems during the CMS application process in 2013, such efforts likewise fail. Notably, the intentional concealment prong of the <u>McCorpen</u> test is an objective inquiry. <u>Brown v. Parker Drilling Offshore Corp.,</u> 410 F.3d 166, 174 (5th Cir. 2005). Accordingly, no genuine issue of material fact exists where a plaintiff conceals his prior injury, even if he denies having intentionally withheld the information. <u>See</u> <u>id.</u>; <u>Bud's Boat Rental, Inc. v. Wiggins</u>, No. 91-2317, 1992 WL 211453, *2 (E.D. La. Aug. 24, 1992).

> [A] seaman may be denied maintenance and cure for failure
> to disclose a medical condition only if he has been asked
> to reveal it. Failure to disclose medical information
> in an interview or questionnaire that is obviously

> designed to elicit such information therefore satisfies
> the intentional concealment requirement.

Brown, 410 F.3d at 174 (citation omitted).  Because there is no dispute that Giroir intentionally misrepresented or concealed medical facts when he denied having prior back problems on two pre-employment medical questionnaires completed as part of his job application, the intentional concealment element of the McCorpen defense is satisfied.

*Materiality*

CMS next contends that the concealed medical condition was material to its decision to hire Giroir.  In opposition, Giroir insists that CMS has not proved that it materially relied on Giroir's answers to the questions regarding prior back problems in his pre-employment questionnaires prior to hiring him.  The Court disagrees.

The record indicates that Giroir was required to submit to a pre-employment physical and to answer questions concerning his physical fitness for the job before CMS would hire him.  In support of the materiality element, CMS offers the sworn affidavit of its Human Resource Marine Personnel Manager, Andrew Soudelier, who attests that CMS falsely assumed Mr. Giroir was fit for duty to serve as a relief captain because he concealed his full medical history of back pain.[7]  Giroir contends that CMS cannot rely on

---

[7] Soudelier further attests in his affidavit:

the "self-serving affidavit" of Mr. Soudelier, "especially in light of opposing evidence." But Giroir fails to point to any evidence that contradicts the affidavit of CMS's Personnel Manager.

Giroir ignores case literature instructing that the materiality evidence present on this record supports CMS's submission that it is entitled to judgment as a matter of law on this issue. Indeed, the Fifth Circuit instructs that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 175 (5th Cir. 2005). Here, there is no dispute that, before CMS hired Giroir, it required that he answer questions about his physical fitness

---

- Had the information pertaining to Mr. Giroir's extensive medical history of back pain, congenital stenosis, degenerative disease of his spine, and surgeries been known at the time of Mr. Giroir's application for employment, this information would have been material to the decision of placing Mr. Giroir in a vessel-based service as a Relief Captain aboard a Cenac Marine Services, LLC vessel and would have required additional investigation.
- Had the information pertaining to Mr. Giroir's extensive medical history of these pre-existing conditions been known at the time of Mr. Giroir's application for employment, Mr. Giroir would not have been employed by Cenac Marine Services, LLC as a Relief Captain or in any other position aboard any Cenac Marine Services, LLC vessel.

for duty and that, in response, Giroir concealed his pre-existing back conditions and prior back surgeries. There is also no genuine dispute that the medical questionnaires were specifically designed to elicit information concerning pre-existing back problems and prior back surgeries, that such information was rationally related to the job applicant's physical ability to perform job duties, and that Giroir concealed his prior lower back conditions and surgeries; accordingly, such concealed information was material to CMS's decision to hire Giroir. See Thomas v. Hercules Offshore Services, L.L.C., 713 F. App'x 382, 387-88 (5th Cir. Mar. 2, 2018). The second prong of the McCorpen defense is satisfied here.

*Causal Link*

As to the third element, the record demonstrates that there was a causal link between the concealed pre-existing lower back condition – lumbar stenosis - and the injury Giroir alleges he sustained to his low back while working for CMS. Giroir does not submit any evidence that calls into question this causal link between his prior back condition and the back injury he alleges he suffered while attempting to retrieve an oil pump from a shelf while working for CMS. "[T]here is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Brown, 410 F.3d at 175-76 (noting that "employers need to be certain that

each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees.").[8]  Because there is a connection between the withheld information relative to a prior low back condition and the low back injury allegedly sustained in 2015, CMS has carried its burden to show a causal connection.  Therefore, on this record, CMS has established a McCorpen defense as to Mr. Giroir's alleged back injury sustained in 2015.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motions for summary judgment are hereby GRANTED; the plaintiff's Jones Act negligence and unseaworthiness claims,

---

[8] In Brown, the plaintiff argued there was no medical proof that his new injury was an aggravation of his old injuries, but the Fifth Circuit found that such proof was unnecessary.  See Brown, 410 F.3d at 175-76.  To establish a "causal link," it was enough for the defendant to show that the old and the new injuries "were to the same location of the [plaintiff's] lumbar spine."  Id. at 176.  "The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes."  Johnson v. Cenac Towing, Inc., 599 F. Supp. 2d 721, 728-29 (E.D. La. 2009); see also Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212-13 (5th Cir. 2006) (finding requisite connection when new back injury was "virtually identical" to previous back injury); Noel v. Daybrook Fisheries, 213 F.3d 637, 2000 WL 554455, at *2 (5th Cir. 2000) (table) (per curium) (finding requisite connection when both injuries were to the "same disc"); Boatright v. Raymond Dugat Co., L.C., 2009 WL 138464, at *4 (S.D. Tex. 2009) (finding requisite connection when plaintiff's "prior and current injuries [were] both to his right hip"); Jenkins v. Aries Marine Corp., 590 F. Supp. 2d 807, 813 (E.D. La. 2008) ("To find the requisite 'connection,' courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body.").

as well as his claim for maintenance and cure related to his alleged back injury, are hereby DISMISSED with prejudice.

New Orleans, Louisiana, March 6, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE