UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RICKY GIROIR | CIVIL ACTION |
| V. | NO. 18-3595 |
| CENAC MARINE SERVICES, LLC | SECTION "F" |

ORDER AND REASONS

Before the Court are two motions by the defendant: (1) motion for summary judgment on the plaintiff's remaining claims for maintenance and cure benefits and negligence under the general maritime law; and (2) motion to strike the plaintiff's jury demand. For the reasons that follow, the motion for summary judgment is GRANTED, and the motion to strike is DENIED as moot.

**Background**

This maritime personal injury action arises out of a relief captain's claim that he sustained injuries on two separate occasions while working aboard vessels owned by his employer.[1]

Ricky Giroir began working for Cenac Marine Services, LLC ("CMS") in November of 2013 as a relief captain and allegedly suffered injuries to his lower back in September of 2015 and his

---

[1] Insofar as Mr. Giroir has failed to submit any competent evidence to controvert the material facts outlined in CMS's statement of undisputed facts, those facts are deemed admitted for purposes of CMS's summary judgment motion. See Fed. R. Civ. P. 56(c)(1); see also Local Rule 56.2.

1

right knee in November of 2017. He also had an extensive medical and surgical record pre-dating his tenure with CMS; that record includes an injury to his right knee sustained during his adolescence for which he underwent arthroscopic surgery.

On November 22, 2017, Mr. Giroir allegedly sustained an injury to his right knee in connection with his assignment as a relief captain aboard the M/V CHRISTINE CENAC.[2] About three weeks later, on December 15, 2017, Mr. Giroir completed an incident report, in which he described the incident as follows: "While crew changing the flat boat rocked causing me to fall on my right knee and twisting left ankel [sic]."

According to medical records, Giroir reported to Terrebone General Medical Center's Emergency Room on November 22, 2017 at 5:55 p.m. The attending nurse practitioner documented her interaction with Mr. Giroir as follows:

> 42-year-old male presents emergency department with right knee and left ankle pain onset 1 hour prior to arrival. He reports having chronic right knee issues stating "it gave out on me and one [sic] my knee gave out on me I twisted my left ankle." Swelling noted to left ankle.[3]

---

[2] Mr. Giroir alleged in his complaint that the incident occurred on November 22, 2017 but amended his complaint to plead the date as November 20, 2017. Moreover, during his deposition, he initially testified that the incident occurred on November 22, 2017 at 3:00 p.m., but he later clarified that it occurred on November 20, 2017. According to vessel logs, Giroir departed the vessel on November 20, 2017.
[3] In an attempt to support his position that he injured his knee while working on a vessel on November 20, 2017, Giroir submits CMS witness reports prepared by two of his co-workers.

Giroir was then referred to Dr. William Kinnard, who performed a total knee replacement surgery on December 11, 2017.

On April 4, 2018, Mr. Giroir sued Cenac Marine Services, LLC, alleging that the defendant's negligence under the Jones Act and the unseaworthiness of its vessels under the general maritime law caused his injuries in 2015 and 2017; he also alleged that the defendant owes him maintenance and cure for both incidents. In response, CMS filed a counterclaim on July 26, 2018, seeking to recover payments made to and on behalf of Mr. Giroir for maintenance and cure that are not related to his work activity with the company.

On January 29, 2019, CMS moved for summary judgment in its favor, dismissing the plaintiff's Jones Act and unseaworthiness claims, as well as his maintenance and cure claim with respect to his alleged back injury. In its Order and Reasons dated March 6, 2019, the Court granted both motions. The following day, the Court continued the March 8, 2019 pre-trial conference and March 25, 2019 trial dates to allow for settlement negotiations and motion practice directed to the issues remaining in the case.

CMS now moves for summary judgment on the plaintiff's remaining claims: (1) maintenance and cure benefits related to his alleged right knee injury; and (2) general maritime law negligence. The defendant also moves to strike the plaintiff's jury demand.

3

I.

*A.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with

4

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

*B.*

CMS first moves for summary judgment in its favor, dismissing the plaintiff's maintenance and cure claim with respect to his alleged right knee injury.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Meche v. Doucet, 777 F.3d 237, 244 (5th Cir. 2015) (quoting Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006) (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968))). The obligation to pay maintenance and cure exists regardless of whether the shipowner was at fault or the vessel unseaworthy. O'Donnell v. Great Lakes Dredte & Dock Co., 318 U.S. 36, 41-42 (1943); Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995), abrogated on other grounds by Atlantic Sounding Co., Inc. v. Townsend, 129 S. Ct. 2561 (2009). "'Maintenance is a daily stipend for living expenses,' whereas 'cure is the payment of medical expenses.'" Meche, 777 F.3d at 244 (citations omitted).

It is well-settled that "[t]he cut-off date for both maintenance and cure is not the point at which the seaman recovers sufficiently to return to work." Springborn v. Am. Commercial Barge Lines, Inc., 767 F.2d 89 (5th Cir. 1985). Rather, "[t]he maintenance and cure duty terminates only when maximum [medical improvement] has been reached." McBride v. Estis Well Serv., L.L.C., 853 F.3d 777, 783 (5th Cir. 2017) (quoting Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002)) (alterations in original). Maximum medical cure is achieved "when it appears

6

probable that further treatment will result in no [b]etterment of the seaman's condition." Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir. 1979); see also Morales v. Garijak, Inc., 829 F.2d 1355, 1359 (5th Cir. 1987) abrogated on other grounds by Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1995) (MMI is "the point at which further treatment will probably not improve his condition.").

In other words, "where it appears that . . . future treatment will merely relieve pain and suffering, but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum medical cure has been achieved." Pelotto, 604 F.2d at 400. Finally, maximum medical improvement "is a medical question, not a legal one," and any "ambiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman." Breese v. Awi, Inc., 823 F.2d 100, 104 (5th Cir. 1987) (internal citations omitted).

*ii.*

CMS first seeks dismissal of Giroir's remaining maintenance and cure claim on the basis that he has reached maximum medical improvement, relieving CMS of any further obligations. CMS submits that the plaintiff's treating orthopedic surgeon, Dr. William Kinnard, has concluded that Giroir has reached maximum medical improvement. For support, CMS points to Dr. Kinnard's deposition

testimony, dated April 2, 2019, in which he testifies that Giroir achieved maximum medical improvement as of April 17, 2018:

> **Q:** First, just let me ask this question: As of April 17, 2018, from your position as the operating orthopedic surgeon, did you believe that Mr. Ricky Giroir had achieved maximum medical improvement regarding the treatment you had afforded him to his right knee?
>
> **A:** Yes.

In opposition, Giroir insists that Dr. Kinnard's deposition testimony demonstrates that he has never officially concluded that Giroir has reached maximum medical improvement. The particular excerpts upon which Giroir relies provide:

> **Q:** Doctor, have you ever drafted any report whatsoever indicating that Mr. Giroir was at maximum medical improvement?
>
> **A:** My note, as we indicated dated – let me find the date. 4/17/18. My plan states that there's adequate healing to allow him to return to work in the capacity of a pilot of a boat. Then I also mention, in the very last sentence, I have released him back at a medium capacity.
>
> **Q:** Yes, sir. And I saw that, and I'm quibbling about it. I'm just asking you if you've ever drafted a report indicating specifically that Mr. Giroir was at maximum medical improvement?
>
> **A:** No.
>
> . . .
>
> **A:** . . . But on question number seven, it states that I treated him, it states from 12/11/17 to 4/17/18. But then the next sentence, which is your question about an approximate date the patient will be able to return to work, it does say undetermined.
>
> . . .
>
> **Q:** And, Doctor, just so I'm clear, I'm not quibbling over all the return to work in a medium capacity at all.

>           It's maximum medical improvement that I'm interested in,
> and that's why I clued in on that particular document
> and that statement, given that you signed and dated it
> in June of 2018 although you last saw him in April of
> 2018.  Correct?
>
> **A:** You're correct.  And again, I never – I do not see a
> document nor do I recall making a statement that he was
> at maximum medical improvement.  I think the implication
> was that he was at a point where, in regards to his knee,
> he was at maximum medical improvement in order to return
> to work in that capacity, but there was never an official
> statement to that effect.
>                           . . .
> **Q:**  . . .  My question is: Did you expect the knee to
> continue the healing process?  And I ask that because
> you used the word adequate healing.
>
> **A:** You're correct.
>
> **Q:** And so did you expect his knee to continue to improve?
>
> **A:** Yes.
>
> **Q:** Okay.
>
> **A:** As a general statement, I tell patients that it takes
> one year for soft tissue maturation to occur.  And I
> realize that's a broad timeframe.  But in general, at
> one year, it's as good as it's going to get.
>
> **Q:** . . . Do you have any idea how Mr. Giroir has done
> subsequent to the last time you saw him in April of 2018?
>
> **A:** I do not.

Giving the testimony a fair reading and construing any ambiguity in favor of the plaintiff, the Court finds that CMS has satisfied its burden of demonstrating that Giroir has reached maximum medical improvement.  Dr. Kinnard's testimony reflects that Giroir underwent a total knee replacement surgery on December 11, 2017 and returned for a final, post-operative visit on April

9

17, 2018. During that appointment, Dr. Kinnard released Giroir to medium capacity work as a boat pilot, although he expected the healing process to continue. Dr. Kinnard further testified that, as a general rule of thumb, he tells patients "that it takes one year for soft tissue maturation to occur" and that "at one year, it's as good as it's going to get." Accordingly, Dr. Kinnard's medical testimony supports a finding that Mr. Giroir reached maximum medical improvement on December 11, 2018 – one year after the date of his surgery.

Moreover, Giroir has presented no evidence demonstrating that he has undergone additional knee treatment since his April 17, 2018 evaluation or that further treatment would improve his physical condition. Nor has he retained any medical expert who has opined that he has not reached maximum medical cure. Accordingly, the Court finds that CMS has carried its burden of proving that Giroir has reached maximum medical improvement, alleviating CMS of any further maintenance and cure obligation.

CMS next submits that it has fully funded all medical treatment and surgery received by Giroir and paid all maintenance benefits to which he is entitled. For support, CMS offers the January 29, 2019 sworn affidavit of Andrew Soudelier, CMS's Human Resource Marine Personnel Manager, in which he attests:

> All of Mr. Giroir's medical bills have been paid to date and Mr. Giroir was paid full wages until February 6,

> 2018 before maintenance was instituted at $30.00/day. Presently, Mr. Giroir is still being paid maintenance.

Although Giroir denies that the Soudelier affidavit is "proof" of anything, he fails to point to any evidence to contradict that CMS had paid all of his medical expenses as of January 29, 2019 or that CMS continued to pay him a daily maintenance allowance at that time. He also fails to offer any evidence regarding his daily living expenses, let alone challenge the sufficiency of the $30 per day maintenance allowance he received. Moreover, "[o]ther courts in this district have found that $30.00/day is a reasonable maintenance payment." See Armstrong v. Offshore Specialty Fabricators, No. 15-4027, 2017 WL 1375268, at *3 (E.D. La. Apr. 17, 2017) (Milazzo, J.) (citing Atl. Sounding Co. v. Curette, No. 05-2810, 2006 WL 1560793, at *3 (E.D. La. May 16, 2006) (Zainey, J.)). Because there is no genuine dispute of material fact, on this record, that CMS has satisfied its maintenance and cure obligation to Mr. Giroir respecting his right knee injury, summary judgment dismissing the plaintiff's remaining maintenance and cure claim is appropriate.[4]

---

[4] Having determined that, on this record, CMS has satisfied its maintenance and cure obligation, the Court need not consider the defendant's alternative basis for seeking summary dismissal of Giroir's maintenance and cure claim – namely, that his knee injury was not sustained while he was in "the service of a vessel."

11

*C.*

In his complaint and amended complaint, Giroir also alleges a cause of action for negligence under the general maritime law.

"It is well settled that a seaman does not have a claim against his employer under the general maritime law for negligence." See In re Crewboats, Inc., No. 02-2023, 2003 WL 21018858, at *3 (E.D. La. May 5, 2003) (Fallon, J.) (citing The Osceola, 189 U.S. 158, 175 (1903); Ivy v. Security Barge Lines, Inc., 606 F.2d 524, 525 (5th Cir.1979)); see also Taylor v. Cal-Dive Int'l, Inc., No. 94-2059, 1994 WL 583271, at *1 (E.D. La. Oct. 18, 1994) (Carr, J.) ("The Jones Act provides the seaman's exclusive remedy for the negligence of his employer."). To qualify as a Jones Act seaman, one must show that (1) his duties contributed to the function of the vessel or to the accomplishment of its mission, and (2) his connection with the vessel in navigation (or an identifiable group of vessels) was substantial in both its duration and nature. Chandris, Inc. v. Latsis, 515 U.S. 347, 368-69 (1995).

Here, it is undisputed that Giroir was a Jones Act seaman at the time of both the 2015 and 2017 alleged incidents. The record reflects that he began working for CMS in 2013 and was employed as a captain of multiple CMS vessels that regularly operated upon navigable waters. Because the Jones Act provides the exclusive negligence remedy for a seaman, like Giroir, against his employer,

summary judgment in favor of CMS dismissing the plaintiff's general maritime law negligence claim is appropriate.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion for summary judgment is GRANTED and that the defendant's motion to strike is DENIED as moot.  IT IS FURTHER ORDERED: that the plaintiff's remaining claims for maintenance and cure benefits and negligence under the general maritime law are hereby DISMISSED with prejudice.[5]

New Orleans, Louisiana, May 23, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] Because no damages have been awarded, CMS may not recover any maintenance and cure benefits it has paid to which Mr. Giroir may not have been entitled.  See Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723, 728 (5th Cir. 2013)("[O]nce a shipowner pays maintenance and cure to the injured seaman, the payments can be recovered only by offset against the seaman's damages award – not by an independent suit seeking affirmative recovery.").